R. J. PORTER v. THE RICHMOND AND DANVILLE RAILROAD COMPANY, and the CHARLOTTE, COLUMBIA AND AUGUSTA RAILROAD COMPANY.

*Evidence—Contract—Judge's Charge.*

1. In an action against a corporation for services rendered to it under a contract of hiring, which contract is denied by the corporation, a letter to the plaintiff from an agent of the corporation, recognizing him as a servant of the corporation, is competent evidence to establish the contract, and also to corroborate the plaintiff when his testimony has been contradicted by such agent.

2. Where the evidence presents the case to the jury in two aspects, it is not error in the trial Judge to refuse a prayer for instructions, which would present the case to the jury only in one aspect.

3. Where a railroad corporation agreed with the authorities of a city to pay a certain proportion of the salary of a policeman to be assigned to duty specially at its depot, and the plaintiff was employed; *It was held,* that he could sue the corporation on the contract for a failure to pay him the part of his salary which it had agreed to do.

CIVIL ACTION, tried before *Montgomery, Judge,* and a jury, at February Term, 1887, of MECKLENBURG Superior Court.

The complaint alleges:

"I. That on the 16th day of May, 1882, at the request of the defendants, he was duly elected special policeman by the Board of Aldermen of the city of Charlotte, State aforesaid,

the said defendants agreeing and promising to pay plaintiff two thirds of such salary as should be fixed by the said Board of Aldermen; that the said Board of Aldermen then and there fixed plaintiff's salary at forty-five dollars per month.

II. That plaintiff served as such special policeman from said 16th day of May, 1882, until the — day of May, 1883, on which last named day, at the request of the defendants, the plaintiff was re-elected to his said office, by the said Board of Aldermen, for the term of two years next thereafter, the defendants agreeing and promising to pay plaintiff at the rate of thirty dollars per month for his said services as theretofore.

III. That plaintiff served the defendants as special policeman from said day of May, 1883, to and including the 11th day of May, 1885; that the defendants paid him for his said services at the rate of thirty dollars per month up to and including the 31st day of July, 1884. That said defendants have failed and refused to pay plaintiff salary from said 31st day of July, 1884, to May 11th, 1885, inclusive, for which said service the defendants are indebted to plaintiff in the sum of two hundred and eighty-one dollars."

The defendant broadly denies these allegations, and alleges as matter of defence as follows:

"For a further defence to plaintiff's first cause of action, the defendant says that, recognizing the necessity for a policeman at its passenger depot in the city of Charlotte, it applied to the Board of Aldermen of said city for the appointment of a special policeman to be stationed at this defendant's depot in said city, but for no definite length of service, and as an inducement to that end, agreed with the said city of Charlotte, to pay two thirds of such salary as might be fixed by said Board of Aldermen for such policeman, which proposition was accepted, and the plaintiff appointed as such policeman by said Board of Aldermen. That

as a matter of convenience, this defendant paid the amount of compensation agreed upon directly to the plaintiff, instead of into the treasury of said city. That after the appointment of plaintiff, as aforesaid, he was under the control and authority of the city, and was assigned to duty at this defendant's depot. That this defendant complied with its agreement with the said city of Charlotte, as herein before set forth, until the 31st day of August, 1884, when it discovered that the plaintiff was so inefficient and negligent of his duties as such policeman, that it notified both the city authorities and the plaintiff, that the plaintiff's services were no longer desired, and this defendant refused to pay any further sum towards his salary, and thereafter the plaintiff never rendered any services to this defendant."

The following is so much of the case settled on appeal as it is necessary to set forth here :

" The plaintiff offered in evidence the records of the Board of Aldermen of the city of Charlotte, showing the proceedings of the meeting of the said board, held February 20th, 1882, the material part of which is as follows:

" Capt. S. S. Pegram, representing the Richmond and Danville Railroad Company, appeared before the board, to request that a policeman be appointed, with assignment to special duty of attending at the depot of said road on the arrival of passenger trains, and stated that the railroad company would consent to pay $30 per month towards the salary of such policeman. On motion of Alderman Schenck, it was ordered that the request be complied with, and that the board proceed to the election of a policeman, who shall be paid $45 per month, provided that the railroad company furnish $30 of said amount, such policeman to be a regular city policeman, subject to the orders of the chief of police of this city, and assigned to special duty at the Richmond and Danville passenger depot, to attend the arrival and departure of all passenger trains, to be uniformed and equipped as other policemen.

Capt. Pegram suggested the name of R. J. Porter as a suitable person for the position, who was thereupon nominated by Alderman Wilkes. * * * * and a vote having been taken, the mayor announced that R. J. Porter had received the majority of the votes, and declared him elected. Mr. Porter being present, then came forward, and the mayor administered to him the oath of office as a policeman, and he was at once assigned to duty."

The plaintiff next offered in evidence the records containing the proceedings of said board of May 12th, 1883, as follows:

"At the request of Capt. Gormley, agent of the Richmond and Danville Railroad Company, the board proceeded to elect a policeman for service at the railroad passenger depot, the railroad company agreeing to pay two thirds of his salary. Alderman Wilkes moved that R. J. Porter be elected, and he was elected unanimously, at the same salary as fixed for the other policemen."

The plaintiff next offered in evidence, the charter and ordinances of the city of Charlotte, by which it appeared, that policemen were elected for a term of two years, the election of plaintiff, 20th February, 1883, being for an unexpired term, which ended in May, 1883. The plaintiff introduced one Fred Nash as a witness, who testified that he had been secretary and treasurer of the city of Charlotte from a time long prior to 1882 up to this time; that in 1882, to May, 1883, the salary of a policeman was $45 per month, and in 1883, it was increased to $50 per month; that the Richmond and Danville Railroad Company never paid anything to the city on account of Porter's salary; that in 1882 and to May, 1883, the city paid Porter $15 per month on account of his salary, and after the salary was raised, paid him $20 per month.

The plaintiff, R. J. Porter, in his own behalf, testified that he entered upon his services as policeman at the depot of defendants when he was first appointed, in February, 1882;

that he discharged the duties of a policeman at the depot from that time until in May, 1885; that his name was first put on the "pay-rolls" of the Richmond and Danville Railroad Company, and that he was paid by said company's paymaster every month just like the other employés of the company; that the company paid him for his services from February, 1882, until May, 1883, regularly every month, and from the latter time on until the 31st day of July, 1884, when the company stopped paying him, and had not paid him for the balance of his term; that the company paid him $30 per month prior to 31st day of July, 1884; that he served out his full term to May 12th 1885, and demanded payment of the balance due of the said company, which was refused.

The defendant introduced J. J. Gormley, who testified that he acted as agent for the defendant in going before the Board of Aldermen; that defendants had joint depots; that Porter attended the trains and kept order until witness quit the service of the company; that he was agent of both companies.

Mr. Young, for the defendant, testified that he was ticket clerk for the defendants at their depot, in January, 1885, and was at the depot four times in the twenty-four hours; that he did not see Porter there about that time, as he recollected, though he could not say positively that he was not there; that he never saw him there.

W. A. Moody, for the defendant, testified that he had been agent for defendant companies since 1st of August, 1884; that Porter rendered no service, to his knowledge, after August, 1884; that witness was there nearly every day; Porter was on the pay-rolls for August, 1884, and was allowed his time, but never paid.

Mr. Kennedy, for defendant, testified that he was yard dispatcher of defendant companies, at their depot, in 1884; that Porter never rendered any service to defendant after August, 1884; that he (witness) had orders not to recognize

him (Porter) as policeman for the company. Cross-examined, he stated that Porter was there, as usual, after Agust, 1884, but that witness did not recognize him as serving the railroad company.

The plaintiff, recalled, testified that on or after the 4th day of October, 1884, the witness Kennedy handed him a letter while he was at the depot acting as policeman.

The defendant objected to the introduction of the letter.

The plaintiff's counsel thereupon stated that they proposed to prove that Kennedy handed the letter to Porter for the purpose of showing, in contradiction of Kennedy, that Kennedy did recognize Porter as policeman at that time, and also as a circumstance tending to corroborate Porter's statement that he acted as policeman at the depot after August, 1884, and until May, 1885, and not to prove any fact by the contents of the letter.

His Honor admitted the evidence of the transaction between Kennedy and Porter for the purpose indicated, and the defendants excepted.

The plaintiff further testified that Kennedy handed him the letter, and asked him to attend to the matter; that he acted as policeman for defendants at their depot after he received Moody's notice, and heard no objection until to-day; that he had a difficulty with Moody before he got the notice.

The defendant requested his Honor to charge the jury:

I. That plaintiff is not entitled to recover on his own testimony.

II. That plaintiff is not entitled to recover on all the facts of the case.

III. That according to the record evidence in the cause, the contract was made with the city of Charlotte by the defendant, and not with the plaintiff, and the plaintiff cannot recover in this action.

His Honor refused to give these instructions, and, among other things not excepted to, charged the jury, that if the

defendant requested the city of Charlotte to appoint a special policeman to be assigned to duty at its depot for the special benefit of defendant, and it agreed to pay two thirds of the policeman's salary—thirty dollars—and plaintiff was appointed as such policeman, and performed the services required of him, he would be entitled to recover of defendant, if it made the contract.

The defendant excepted to the refusal of the Court to give its special instructions, and also excepted to the part of the instructions given.

There was a verdict for the plaintiff.

The defendant moved for a new trial; motion overruled; judgment for the plaintiff; appeal by defendant.

*Mr. Platt D. Walker*, for the plaintiff.
*Mr. Chas. M. Busbee*, for the defendant.

MERRIMON, J., (after stating the facts). The letter handed to the plaintiff on the 4th of October, 1884, by the "yard dispatcher" of the defendant, was clearly competent evidence, as tending to prove, not the truth of what was said in it, but that the agent of the defendant at and about its depot, where the plaintiff, in the course of his employment as policeman was accustomed to be, recognized and treated him as a policeman in the service of the defendant, as contemplated by the contract of employment alleged in the complaint. And, moreover, the fact of handing the letter to the plaintiff, and directing him to do service, was evidence corroborative of his testimony, while it tended to contradict the witness who handed it to him.

The defendant was not entitled to the special instructions which its counsel requested the Court to give the jury, because, if the jury believed the evidence in the view of it contended for by the plaintiff, he was entitled to their verdict. There was evidence tending to prove the contract of

employment, and service rendered the defendant in pursuance of it, substantially as alleged in the complaint, while there was evidence introduced by the defendant to the contrary. It was the province of the jury to hear and weigh it all, and determine what part of it they would believe. Nor was the contract in question made by the defendant entirely with the Board of Aldermen of the town of Charlotte. It was, indeed, a party to it, but so also was the plaintiff, in substance and legal effect.

The Board of Aldermen, at the instance of the defendant, agreed to appoint the plaintiff to be policeman, and did so appoint him, to do special police service at and about its depot, and to pay him a fixed part of the compensation agreed to be paid to him ; the defendant, as certainly agreeing to pay him another fixed part of it; the plaintiff agreeing on his part, to accept the appointment with its terms, and to do the service required. This seems to us to be the fair, practical import and effect of the contract—a sort of arrangement for the convenience of all, and for the special benefit of the defendant. The parties so understood and acted upon it. The defendant understanding that it had agreed to pay the plaintiff a certain part of his salary, placed his name on its "pay-roll," and for a considerable while regularly paid him the compensation it agreed to pay. There is nothing of which we can conceive, in the nature of the arrangement and contract, that rendered it essential that the plaintiff's wages should go into the hands of the Board of Aldermen, and thence into his own hands. That would be a useless sort of circumambulation that ill comports with practical business transactions; and it is not surprising that the defendant took this view, until this action was brought. Whether the plaintiff did service in pursuance of the contract as alleged by him, was a question of fact to be determined by the jury, and this they found in favor of the plaintiff.

The instructions given the jury by the Court were substantially correct. Judgment affirmed.

No error. Affirmed.